## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DANIEL FLINKFELT

v.                                                                                    C.A. NO. 09-589 S

A.T. WALL, ET AL.

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Presently before the Court is a motion filed by plaintiff Daniel Flinkfelt, *pro se*, for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(2) (Docket #2). Plaintiff is an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island in the custody of the Rhode Island Department of Corrections ("RIDOC"). Plaintiff filed a complaint against RIDOC Director A.T. Wall and ACI Warden Stephen Boyd alleging that new policies requiring a portion of his wages be placed in his frozen inmate trust account and terminating interest payments on his inmate trust accounts violated his rights (the "Complaint") (Docket # 1). This matter has been referred to me for determination; however, upon screening the Complaint, as required by 28 U.S.C. § 1915(e)(2) ("1915(e)(2)"), I have found that the Complaint fails to state a claim upon which relief may be granted. Therefore, I address this matter by way of this Report and Recommendation. For the reasons stated below, I recommend that the Complaint be DISMISSED and plaintiff's motion to proceed *in forma pauperis* be DENIED.

## BACKGROUND

The following background is based on allegations plaintiff sets forth in the Complaint, including the attachments thereto, except as otherwise noted.

Plaintiff asserts that, over his objection, the state (i) takes a portion of his prison wages and places the funds in his "frozen account" and (ii) does not pay interest on his inmate trust accounts. He alleges that he has been incarcerated for 14 years, and that the application to him of legislation increasing the maximum amount in the frozen account is an unlawful retroactive application of the law.

Under a liberal reading, the Complaint raises claims under 42 U.S.C. § 1983 ("§ 1983") that plaintiff's Constitutional rights were violated. Specifically, the Complaint appears to allege that (i) the forced deposit of a portion of plaintiff's wages into his frozen account pursuant to

1

Rhode Island Law enacted after he was sentenced and incarcerated violates his rights under the Ex Post Facto and Due Process Clauses of the United States Constitution and (ii) the termination of payments of interest on funds held in plaintiff's inmate trust accounts constitutes a government taking without just compensation in violation of the Fifth Amendment Takings Clause and violates his due process rights under the Fourteenth Amendment.

## DISCUSSION

### I.   Screening Under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis,* § 1915(e)(2) instructs the Court to dismiss a case at any time if the Court determines that the action: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Similarly, 28 U.S.C. § 1915A ("§ 1915A") directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and dismiss such claims for identical reasons. 28 U.S.C. § 1915A(b).

The issue in this case is whether plaintiff's complaint states claims for which relief may be granted. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2) and § 1915A is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Pelumi v. Landry,* No. 08-107, 2008 WL 2660968, at * 3 (D.R.I. June 30, 2008). In order to survive a Rule 12(b)(6) motion a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* -- U.S. --, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). The Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff, *see Gargano v. Liberty Int'l Underwriters,* 572 F.3d 45, 48 (1st Cir. 2009), and review pleadings of a *pro se* plaintiff liberally, *see Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285 (1976). However, the Court need not credit bald assertions or unverifiable conclusions. *See Iqbal,* 129 S.Ct. at 1949.

### II.   § 1983 Standard

Plaintiff appears to assert his claims pursuant to § 1983, the Federal Civil Rights Act. In order to prevail under § 1983, a plaintiff must demonstrate "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of a right secured by the Constitution or laws of the United States." *Chongris v. Bd. of Appeals,* 811 F.2d 36, 40 (1st Cir. 1987). Here, although defendants clearly acted under color of state law, I find plaintiff has not demonstrated that they violated plaintiff's rights.

## III.    Legal Background

Pursuant to Rhode Island General Law § 42-56-22, the RIDOC Director has discretion to permit inmates to labor and be paid for such labor up to three dollars per day. R.I. GEN. LAWS § 42-56-22 (1956). Under the statute, the wage is to be credited to the prisoner's inmate trust account; provided, however, that RIDOC is required to maintain an account, referred to as the "frozen" or "encumbered" account, into which "at least twenty-five percent (25%) of the earnings of each prisoner up to a maximum of …one thousand dollars ($1,000)" for all prisoners not serving life in prison without parole. *Id.* The funds in the encumbered account are not available for use by the prisoner while he or she is incarcerated, but are "to be turned over to the prisoner at the time of his or her release from the institution, the funds being his or her property." *Id.* The statute requiring the creation of encumbered funds was enacted in 1976, and has been amended periodically, including most recently in 2007, at which time the encumbered account maximum was increased from $500 to $1,000. *Id.* Other inmate funds are held in an "available account," which an inmate may use for certain purposes within the prison, such commissary purchases, as well as withdraw and place in outside commercial bank accounts. *See Young v. Wall*, C.A. No. 07-034 S, Report and Recommendation, at p. 1 (D.R.I January 28, 2010) (*"Young R&R"*).

Additionally, pursuant to authority delegated to him by Rhode Island General Law § 46-22-1 *et seq.*, Director Wall enacted RIDOC Policy No. 2.17-1 in June 1999, directing that interest earned on monies held in the fund holding inmate accounts (the "Inmates Accouns Fund") accrue to the depositing inmates in an equitable fashion. *Young R&R*, at p. 2. In April 2000, Director Wall repealed Policy No. 2.17-1 and replaced it with RIDOC Policy No. 2.17-2 ("Policy 2"), which instructed that the interest be distributed to inmates' individual accounts based on the accounts' average daily balances. *Id.* In June 2002, Director Wall, seeking to offset the cost of maintaining banking, commissary, and related services for inmates, directed that interest accrue to the State of Rhode Island rather than to the Inmate Accounts Fund. *Id.* This change was announced via a posted notice to prisoners on June 20, 2002. *Id.* On August 28, 2002, RIDOC suspended the provisions of Policy 2 that called for interest to be credited to inmates, and, on May 6, 2003, RIDOC replaced Policy 2 with RIDOC Policy No. 2.17-3 ("Policy 3"). *Id.* Under Policy 3, interest earned on the Inmate Accounts Fund no longer accrues to inmates, but instead accrues to the State of Rhode Island. *Id.*

## IV.   Encumbered Account

### A.   No Ex Post Facto Clause Violation

"The *Ex Post Facto* Clause of the United States Constitution 'forbids the application of any law or rule that increases punishment for pre-existing conduct.'" *Rourke v. Rhode Island*, No. 09-10, 2009 WL 4015597, at * 3 (D.R.I. Nov. 19, 2009)(citing *United States v. Ditomasso*, 552 F.Supp.2d 233, 240 (D.R.I. 2008)). Here, plaintiff alleges that legislation increasing the maximum amount of the encumbered account was unlawfully applied to him because it was enacted after he was incarcerated. However, "[o]nly a punitive measure can violate the Ex Post Facto Clause." *Simmons v. Galvin*, 575 F.3d 24, 43 (1st Cir. 2009)(citing *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140 (2003)). Therefore, "the Court must analyze whether the law being applied to the plaintiff is 'a civil, regulatory measure within the meaning of the caselaw, or whether it is punitive.'" *Rourke*, at * 3 (citing *Simmons*, 575 F.3d at 43). "[E]even if the legislature intended to deem a particular law 'civil,' courts must further inquire whether 'the statutory scheme was so punitive either in purpose or effect as to negate that intention.'" *Id.*, at 44 (citation omitted).

Here, although the 2007 legislation increasing the maximum amount of the encumbered account occurred after plaintiff's sentencing and incarceration, the application of such legislation to plaintiff does not violate the Ex Post Facto Clause. It is clear that the legislation at issue in this case, which requires a portion of inmate wages be set aside for the inmate to have upon his release from prison, is a regulatory measure, not intended to punish. *See Peterson v. Lowry*, 161 F.3d 13, at * 1 (9th Cir. 1998)(finding statutes enacted after plaintiff's conviction requiring deductions from prisoners' wages for, *inter alia*, inmates' personal savings accounts and contribution to the cost of incarceration did not violate the Ex Post Facto Clause "because the statutes at issue are not punitive and thus do not impose additional punishment for [plaintiff's] crimes"). Further, the legislation is neither punitive in purpose nor in effect.

Accordingly, plaintiff's claim asserting a violation of the Ex Pos Facto Clause should be denied. I so recommend.

**B.      No Due Process Clause Violation**

To the extent plaintiff claims that the legislation requiring a portion of his wages be held in a frozen account which he may not access until his release from prison violates his rights under either substantive or procedural due process, such claims fail. "A prison regulation does not violate a prisoner's substantive-due-process rights unless the prisoner proves that the regulation lacks 'a rational relation to legitimate penological interests.'" *Sperry v. Werholtz*, 321 Fed.Appx. 775, 778 (10th Cir. 2009)(quoting *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162 (2003)). However, here it is clear that the legislation requiring prisoners to set aside money for use upon their release is rationally related to a legitimate penological interest. *See, e.g., id.* (determining that regulation requiring prisoners' participation in mandatory prison savings accounts did not violate prisoner's substantive due process rights because the Kansas corrections department "retains a legitimate interest in providing [prisoner] with a source of funds upon his release to ease his transition into society"); *Peterson*, 161 F.3d 13, at * 1 (finding substantive due process not violated by legislation mandating portion of prisoners' wages be deposited into their prison savings account because legislature had a rational basis for enactment of such legislation).

Further, with respect to any claim that the legislation at issue violates plaintiff's procedural due process rights, "the legislative determination provides all the process that is due." *Atkins v. Parker*, 472 U.S. 115, 129, 105 S.Ct. 2520 (1985); *see also Cook v. Lehman*, 188 F.3d 512, at *1 (9th Cir. 1999)(finding as frivolous prisoner's claim that legislation requiring deduction of 30 percent of prisoners' wages to fund, *inter alia*, mandated inmate savings accounts violated procedural due process); *Peterson*, 161 F.3d 13, at *1 ("The legislative process satisfies procedural due process requirements" regarding the statute mandating a portion of inmates' wages be transferred to their personal prison savings accounts).

Therefore, to the extent plaintiff asserts that Rhode Island General Law § 42-56-22 violates his rights under the Due Process Clause, such allegations fail to state claims on which relief may be granted and should be dismissed. I so recommend.

**V.      Termination of Interest Payment:  No Takings or Due Process Clause Violations**

Additionally, with respect to plaintiff's claims regarding the state's failure to distribute interest payments to him on his inmate account funds, this Court has previously determined that ACI inmates do not have a property right to such interest payments for purposes of the Takings Clause. *Young v. Wall*, 359 F.Supp.2d 84, 93 (D.R.I. 2005).

Further, as discussed in a recently-issued Report and Recommendation, inmates' procedural due process rights were not violated by either (i) the discontinuation of interest payments to ACI inmates in contravention to RIDOC Policy 2 or (ii) the promulgation and implementation of RIDOC Policy 3 under which the interest on the Inmate Accounts Fund accrues to the state. *Young R&R*, at pp. 5-10. First, as the decision to stop paying interest to inmates on their inmate trust accounts was a practice applicable to all inmates, rather than based on individual criteria, such action did not implicate procedural due process rights. *Id.* at p. 5; *see also Hoffman v. City of Warwick*, 909 F.2d 608, 620 (1st Cir. 1990)(denial of seniority in employment to veterans without a hearing pursuant to class-wide policy of not enforcing statute providing for such seniority did not violate procedural due process). Second, the promulgation and implementation of RIDOC Policy 3 occurred pursuant to a delegation of authority by the Rhode Island legislature, and, thus, constituted a "legislative determination provid[ing] all the process that is due." *Atkins*, 472 U.S. at 129; *see also Sperry*, 321 Fed.Appx. at 779 (due process does not require hearing prior to implementation of policy mandating 10% of money prisoners receive from outside sources be placed in prisoners' savings accounts because prisoner received all the process that was due when prison policy was enacted); *Young R&R*, at pp. 6-9.

Additionally, to the extent plaintiff claims that Policy 3 violates his substantive due process rights, such claims also fail. It is clear that Policy 3, pursuant to which the state uses the interest funds to offset the costs of the banking, commissary and related services that the ACI provides to inmates, is rationally related to a legitimate penological interest. *See Young R&R*, at p. 2.

Accordingly, plaintiff's claims that RIDOC's failure to distribute interest earned on his inmate trust accounts to him violated his rights under the Fifth and/or Fourteenth Amendments fail to state claims on which relief may be granted and should be dismissed. I so recommend.

## CONCLUSION

For the reasons set forth above, I recommend the dismissal of the Complaint for failure to state a claim on which relief may be granted. Accordingly, having recommended the dismissal of all claims in the Complaint, I recommend that plaintiff's motion to proceed *in forma pauperis* be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed.R.Civ.P. 72(b). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
February 9, 2010